```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                     ATHENS DIVISION
```

KENTERYON KINSEY,                *

    Plaintiff,              *

vs.                              *
                                             CASE NO. 3:20-CV-43 (CDL)
FRANKLIN COUNTY SHERIFF STEVIE   *
THOMAS, *et al.*,
                                     *

    Defendants.
                                       *

O R D E R

Kenteryon Kinsey led several Franklin County deputy sheriffs on a high-speed chase on an interstate highway. Kinsey alleges that once the deputies stopped him, they used excessive force to effectuate his arrest and failed to offer proper medical attention. Kinsey brought claims under 42 U.S.C. § 1983 against the deputies, the Franklin County Sheriff, and Franklin County. Defendants filed a motion for summary judgment on all claims (ECF No. 18). As discussed below, the motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing

summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

In accordance with the Court's local rules, Defendants submitted a statement of undisputed material facts with their summary judgment motion.  *See* M.D. Ga. R. 56 (requiring statement of material facts that is supported by the record).  Kinsey, who is represented by counsel, filed a "response" to the summary judgment motion, but the response summarily argues that the summary judgment motion should be denied because genuine issues of material fact exist.  *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 1, ECF No. 20.  Kinsey did not make any arguments in opposition to the summary judgment motion.  Kinsey also did not respond to Defendants' statement of material facts.  Therefore, the statement of material facts is deemed admitted pursuant to Local Rule 56.  *See* M.D. Ga. R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").  The Court reviewed the Defendants' citations

to the record to determine if a genuine factual dispute exists. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008).

## FACTUAL BACKGROUND

On April 3, 2018, Kinsey was riding his motorcycle southbound on Interstate 85. When he reached the Georgia state line, he "gave it all the gas it could take"—reaching speeds of more than 140 miles per hour—and started weaving in and out of traffic, "splitting lanes." Kinsey Dep. 26:4-20, ECF No. 21-1. Defendant Brenton McCurry, a deputy with the Franklin County Sheriff's office, responded to a "be on the lookout" for a "sport bike type motorcycle that was recklessly passing vehicles in the emergency lanes at a high rate of speed southbound on Interstate 85 in Franklin County." McCurry Decl. ¶ 2, ECF No. 18-3. McCurry, who was in the median of Interstate 85 monitoring southbound traffic, observed a sport bike matching the description. He checked its speed and it registered as 95 miles per hour in a 70 mile-per-hour zone. *Id.* ¶ 3. McCurry pulled into the southbound lanes of Interstate 85 and activated his patrol vehicle's lights and siren to initiate a traffic stop. *Id.* ¶ 4. The motorcycle did not stop. Instead, the driver went faster and McMurry observed that the motorcycle was "traveling in excess of 140 mph, and the driver was operating the motorcycle in a reckless manner, making erratic lane changes, following too closely, improperly passing, failing to use turn signals and

3

driving in the median and emergency lanes." *Id.* ¶ 5. McCurry notified Franklin County 911 dispatch that he was in pursuit. The traffic was "fairly congested," and McCurry observed the motorcycle driver "abruptly splitting the lanes between vehicles and tractor trailers as he traveled at speeds in excess of 100" miles per hour. *Id.* ¶ 6.[1]

Other deputies entered Interstate 85 ahead of the motorcycle, and the motorcyclist was forced to reduce his speed. *Id.* ¶ 7. Though the motorcyclist attempted to use the emergency lane to pass the vehicles, a patrol car blocked his path and the motorcyclist finally stopped. *Id.* McCurry and other deputies approached the driver, and they pulled the driver off the bike and placed him on the ground.[2] The driver—Kinsey—was given verbal orders to put his hands behind his back for handcuffing, but he did not comply. *Id.* ¶ 8. After Kinsey "failed to comply for several seconds, [McCurry] used [his] X-26 Taser to apply a five second burst in drive stun mode to the driver's back." *Id.* Deputy Jason Roach and Captain Nick Fowler helped McCurry take the Kinsey into physical custody, handcuff him, and put him in the back of McCurry's patrol vehicle so he could be transported to the Franklin County Detention Center. *Id.* ¶¶ 9, 12.

---

[1] Defendants submitted the dash cam video from McCurry's patrol vehicle. Based on the Court's review, the video shows fairly congested traffic as McCurry pursued the motorcycle. Defs.' Mot. for Summ. J. Ex. A, McCurry Patrol Car Video.
[2] This portion of the traffic stop is not visible on the dash cam video that was submitted to the Court.

4

According to Kinsey, a deputy told him to freeze. Kinsey lifted his hands, then someone pulled him off the motorcycle and slammed him to the ground, banging his helmet on the ground several times. Kinsey Dep. 33:5-23. A deputy told Kinsey to put his hands behind his back. Kinsey testified that he put his hands behind his back but also kept wiggling his elbows; deputies repeatedly told Kinsey to put his hands behind his back, then a deputy used a Taser on him. *Id.* at 34:4-16. At that point, Kinsey was handcuffed and placed in McCurry's patrol vehicle. McCurry spoke to Kinsey, who apologized for leading the deputies on a high-speed chase. McCurry Decl. ¶ 11. Kinsey did not complain about injuries or pain at the scene, and he did not request any medical care at the scene or while McCurry was transporting him to the Franklin County Detention Center. *Id.* ¶ 13; *accord* Kinsey Dep. 49:6-14. At the detention center, Kinsey did not complain of any injuries or being in pain, and he did not ask for medical treatment. Kinsey Dep. 49:6-11. Kinsey has not sought medical treatment for any injuries he sustained during his arrest. *Id.* at 55:19-23.

DISCUSSION

Kinsey brought individual capacity claims against McCurry, Roach, and Fowler under 42 U.S.C. § 1983, asserting that they violated his Fourth Amendment rights by subjecting him to

5

excessive force during his arrest.[3]  Kinsey also brought § 1983 claims against McCurry, Roach, Fowler, and Franklin County Sheriff Stevie Thomas, asserting that they were deliberately indifferent to his serious medical needs, in violation of the Fourteenth Amendment.  And he asserts an "indemnification claim" against Franklin County.  Compl. ¶¶ 33-36, ECF No. 1.  Defendants argue that the evidence does not demonstrate any violation of Kinsey's constitutional rights and that the "indemnification claim" against Franklin County fails as a matter of law.  The Court will address each issue in turn.

## I. Kinsey's Excessive Force Claim

Kinsey contends that McCurry, Roach, and Fowler used excessive force when they pulled him off his bike, slammed him to the ground, and used a Taser on him.  McCurry, Roach, and Fowler argue that they are entitled to qualified immunity on this claim.  "Qualified immunity protects government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Duncan v. Wade*, No. 20-13004, 2021 WL 1235721, at *2

---

[3] Kinsey's excessive force claim is asserted only against McCurry, Roach, and Fowler. Compl. ¶¶ 23-27, ECF No. 1.  There is no indication that this claim is asserted against Franklin County Sheriff Stevie Thomas or that Kinsey is attempting to assert an excessive force claim against McCurry, Roach, and Fowler in their official capacities. *Compare* Compl. ¶ 6 (stating that Sheriff Thomas is "sued in his official capacity") *with Id.* ¶¶ 8-10 (making no statement that McCurry, Roach, or Fowler is sued in his official capacity).

6

(11th Cir. Apr. 2, 2021) (per curiam) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  An officer is entitled to "qualified immunity unless the plaintiff can demonstrate '(1) that the facts, when construed in plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct.'"  *Id.* (quoting *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015)).  There is no dispute that McCurry, Roach, and Fowler were acting in the scope of their discretionary authority when they stopped Kinsey, pushed him to the ground, and used a Taser on him.  The remaining question is whether these officers violated a clearly established constitutional right.

"An officer's use of force is excessive under the Fourth Amendment if the use of force was objectively unreasonable in light of the facts and circumstances confronting the officer." *Id.* (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011)).  "To determine whether an action constituted reasonable or excessive force," the courts "examine the 'totality of the circumstances' including '(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.'" *Id.* (quoting *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004)). "The calculus of reasonableness must embody allowance for

7

the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

Here, there is no dispute that Kinsey led deputies on a high-speed chase in congested traffic. There is also no dispute Kinsey was not handcuffed or restrained when deputies removed him from his motorcycle and used a Taser on him. Thus, there was a need for some force. The Eleventh Circuit has recognized that use of a Taser is reasonable in "tense and difficult" situations where the arrestee has not yet been restrained—even if the evidence viewed in the light most favorable to the arrestee suggests that the arrestee was not resisting. *Id.* (citing *Draper*, 369 F.3d at 1278). Here, the deputies pointed to evidence that Kinsey failed to comply with orders to put his hands behind his back, and Kinsey's own deposition testimony establishes that before McCurry used the Taser on Kinsey, Kinsey was told at least three times to put his hands behind his back but continued wiggling his elbows. And, the extent of Kinsey's physical injury was not serious. Shortly after being tased, Kinsey was able to speak to McCurry and sit up in the patrol car. Kinsey did not complain of any pain or injury at the scene or at the detention center. Based on all the circumstances, the Court

8

finds that McCurry, Roach, and Fowler are entitled to qualified immunity on Plaintiff's excessive force claims and that no genuine fact disputes exist for resolution regarding qualified immunity. Accordingly, summary judgment is granted in favor of McCurry, Roach, and Fowler on the excessive force claims.

## II.  Kinsey's Deliberate Indifference Claim

In addition to his excessive force claim, Kinsey contends that McCurry, Roach, Fowler, and Thomas were deliberately indifferent to his serious medical needs, in violation of the Fourteenth Amendment. To prevail on this claim, Kinsey must establish that he had an objectively serious medical need, that Defendants acted with deliberate indifference to that serious medical need, and that he suffered an injury caused by Defendants' wrongful conduct. *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 (11th Cir. 2020). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'" and that if left unattended "poses a substantial risk of serious harm." *Id.* (first quoting *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019), then quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). "A defendant is deliberately indifferent to a plaintiff's serious medical need when he "(1) ha[s] subjective knowledge of a risk of serious harm; (2) disregard[s]

9

that risk; and (3) act[s] with more than gross negligence." *Id.* (alterations in original) (quoting *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010)).

Here, the record establishes that Kinsey was alert and speaking shortly after McCurry used the Taser on him. Kinsey admits that he did not complain about any injuries or pain at the scene of his arrest, he did not request medical care at the scene of his arrest, and he did not seek medical care at the detention center following his arrest. Kinsey did not point to any evidence to suggest that he had an objectively serious medical need, that any of the Defendants had a subjective knowledge of a risk of serious harm, or that he suffered any injuries caused by the Defendants' deliberate indifference. Accordingly, Kinsey's deliberate indifference claim fails as a matter of law, and Defendants are entitled to summary judgment on it.[4]

### III. Kinsey's Claim Against Franklin County

Kinsey claims that Franklin County is liable for any damages caused by the individual Defendants' conduct. Deputy sheriffs are employees of the sheriff, not the county. *See, e.g.*, *Green v. Baldwin Cnty. Bd. of Comm'rs*, 842 S.E.2d 916, 917 (Ga. Ct.

---

[4] To the extent that Kinsey asserts an official capacity claim against Sheriff Thomas for deliberate indifference to a serious medical need, Defendants also argue that the claim is barred by Eleventh Amendment immunity. The Court agrees. *See Palmer v. Correct Care Sols., LLC,* 291 F. Supp. 3d 1357, 1366 (M.D. Ga. 2017) (concluding that the Eleventh Circuit's decision in *Lake v. Skelton*, 840 F.3d 1334 (11th Cir. 2017) required the Court to conclude for purposes of Eleventh Amendment immunity that a Georgia county sheriff acted as an arm of the State in providing medical care to county jail detainees).

10

App. 2020). Furthermore, Kinsey did not point to any evidence that an official Franklin County policy or custom was the moving force behind any constitutional violation Kinsey allegedly suffered. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (establishing that a local government may only be held liable under § 1983 when its official policy or custom causes a constitutional violation). Accordingly, Kinsey's claim against Franklin County fails.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion for summary judgment as to all of Kinsey's claims (ECF No. 18).

IT IS SO ORDERED, this 22nd day of July, 2021.

                                          S/Clay D. Land
                                          CLAY D. LAND
                                          U.S. DISTRICT COURT JUDGE
                                          MIDDLE DISTRICT OF GEORGIA